PRESENT: All the Justices

E.I. DU PONT DE NEMOURS AND COMPANY

v.  Record No. 011739          OPINION BY JUSTICE ELIZABETH B. LACY
                                        June 7, 2002
BRENDA G. EGGLESTON

                    FROM THE COURT OF APPEALS OF VIRGINIA

     Brenda G. Eggleston was employed by E.I. du Pont de Nemours
and Company (Du Pont).  During her employment, she received
temporary incapacity payments under the Workers' Compensation
Act for three different injuries arising out of her work.
Eggleston was diagnosed with work-related bilateral carpal
tunnel syndrome on September 28, 1989.  She was awarded
temporary total incapacity benefits for a four-week period from
September 26, 1990 through October 30, 1990 and permanent
partial incapacity benefits from January 30, 1992 through July
29, 1992.  Next, Eggleston received temporary total incapacity
benefits for a five-week period in 1992 as a result of an injury
to her right shoulder.

     On March 9, 1993, Eggleston was awarded temporary partial
incapacity benefits of $74.35 per week based on a diagnosis of
bilateral gamekeepers' thumb.  Although Du Pont did assign
Eggleston to light duty work because of her physical conditions,
ultimately Du Pont terminated Eggleston for medical reasons on
November 30, 1993.

Immediately following her termination and while receiving temporary partial incapacity benefits for the gamekeepers' thumb injury, Eggleston filed an application for a change of condition seeking temporary total incapacity benefits under her gamekeepers' thumb claim, but later, by amended application, sought permanent incapacity benefits, based on all three injuries. Following a hearing in 1994, the deputy commissioner awarded Eggleston temporary total incapacity benefits stating that Eggleston's "physical limitations are the result of bilateral gamekeepers thumb, bilateral carpal tunnel syndrome and right shoulder problems." The amount of the weekly payment was based on Eggleston's wages at the time she suffered her gamekeepers' thumb injury. Du Pont did not appeal the decision of the deputy commissioner.

In February 1999, Du Pont filed a change in condition application under all three of Eggleston's claim files, seeking various reductions in, and credits for, the incapacity payments it was making. As relevant to this appeal, Du Pont asserted that Eggleston's gamekeepers' thumb injury had resolved itself and that the incapacity award should be appropriately reduced. Du Pont also asserted that it was entitled to a weekly credit against each injury toward the 500-week maximum recovery period established by Code § 65.2-518, rather than a credit limited to

2

the gamekeepers' thumb injury, the crediting mechanism imposed by the Commission.

Based on the evidence produced, the deputy commissioner concluded that the gamekeepers' thumb injury had resolved itself, and went on to hold that because the 1994 award was "based upon a finding that the claimant was disabled in part from all three compensable conditions, the employer has now established that the claimant's disability is due only to her two remaining conditions:  bilateral carpal tunnel syndrome and the right shoulder injury."  The deputy commissioner directed that the weekly incapacity payment be based on Eggleston's highest weekly wage at the time she was diagnosed with bilateral carpal tunnel syndrome and that the payments made under the award be credited against the bilateral carpal tunnel injury claim.

The deputy commissioner denied Du Pont's request that it receive credit against each of the underlying injuries, rather than just the gamekeepers' thumb injury, for each week that it paid the 1994 award, concluding that such credit was not authorized under the Workers' Compensation Act and, therefore, the weekly payments under the 1994 award had been properly credited to the gamekeepers' thumb injury only.  The decision of the deputy commissioner was affirmed by the Commission and by the Court of Appeals.  E.I. du Pont de Nemours and Co. v.

Eggleston, Record No. 2648-00-2, 2001 Va. App. LEXIS 394 (Va. App. July 3, 2001) (unpublished).  On appeal, Du Pont again asserts that it was entitled to a credit for purposes of Code § 65.2-518 against each of Eggleston's injuries for each payment it made pursuant to the 1994 award.

We begin our analysis of the issue presented in this appeal mindful of two principles to be applied when considering benefits and awards available under the Workers' Compensation Act, Code §§ 65.2-100 through –1310 (the Act).  First, "[t]he right to compensation under the workmen's compensation law is granted by statute, and in giving the right the legislature had full power to prescribe the time and manner of its exercise." Winston v. City of Richmond, 196 Va. 403, 407, 83 S.E.2d 728, 731 (1954).  Second, the Act is remedial legislation and should be liberally construed in favor of the injured employee.  Byrd v. Stonega Coke & Coal Co., 182 Va. 212, 221, 28 S.E.2d 725, 729 (1944).

As both the Commission and Court of Appeals recited, the General Assembly authorized crediting a single payment as more than one week for purposes of Code § 65.2-518, in only one instance.  That instance is where the claimant is receiving a benefit for both a permanent loss and a benefit for partial incapacity.  Code § 65.2-503(E)(2) authorizes an employer to make a single payment comprised of the amount due an employee

4

pursuant to an award of permanent loss (Code § 65.2-503) and partial incapacity (Code § 65.2-502) and provides that such single payment must be credited as two weeks compensation for purposes of the 500-week compensation limitation.

This section, of course, does not apply in this case because this case involves one, not two, awards and does not involve an award for a temporary partial and a contemporaneous award for permanent loss. However, a well-recognized rule of statutory construction, expressio unius est exclusio alterius, provides that the mention of a specific item in a statute implies that other omitted items were not intended to be included within the scope of the statute. Smith Mountain Lake Yacht Club v. Ramaker, 261 Va. 240, 246, 542 S.E.2d 392, 395 (2001); Commonwealth v. Brown, 259 Va. 697, 704-05, 529 S.E.2d 96, 100 (2000); Board of Supervisors v. Wilson, 250 Va. 482, 485, 463 S.E.2d 650, 652 (1995); Turner v. Wexler, 244 Va. 124, 127, 418 S.E.2d 886, 887 (1992). Thus, specifically allowing a simultaneous or double crediting for two awards under the circumstances contemplated by Code § 65.2-503(E)(2) and not providing for such double crediting for the purpose of Code § 65.2-518 under any other circumstances, leads us to the conclusion that the General Assembly did not authorize or intend to authorize a double credit in circumstances in which the

General Assembly has not authorized either a combined payment for more than one award or a double credit for a single payment.

Nevertheless, Du Pont argues in this appeal that the failure to simultaneously credit the 1994 award against each of Eggleston's injuries violates Code § 65.2-518 by allowing more than 500 weeks of compensation for a single injury.

The difficulty in this case is the nature of the injury upon which the 1994 award was based. The relevant portion of the deputy commissioner's opinion in 1994 stated:

> From the evidence we find that the claimant continues to have marked physical restrictions as revealed by the medical records and her own testimony at hearing. Claimant's physical limitations are the result of bilateral gamekeepers thumb, bilateral carpal tunnel syndrome and right shoulder problems. As a result of her physical limitations she was provided some light duty work with the employer but this did not prove to be consistent with her abilities and accordingly she was terminated from employment for physical reasons. Given this circumstance, we find ample justification for finding that the claimant . . . is not able to perform her pre-injury or even light duty work provided by her employer.

The deputy commissioner also found that the claimant had tried to find other employment, but was unsuccessful. The deputy commissioner then proceeded to enter "[a]n award . . . for the payment of temporary total disability benefits."

The deputy commissioner unquestionably determined that the claimant qualified for temporary total incapacity benefits, but did not identify the specific injury upon which he based his

award.  The significance of this omission arises from the

mandates of the Workers' Compensation statutes.  Code § 65.2-506

provides that a claimant may not receive compensation for more

than one injury at a time and Code § 65.2-518 provides that a

claimant may not receive more than 500 weeks of compensation for

any injury.[1]  Identification of the injury is essential to the

application of these statutes.

_____

[1] Code § 65.2-518 provides that compensation "under this title shall in no case" exceed 500 weeks.  As the parties agree, "in no case" refers to a 500-week limit on compensation per injury or occupational disease, not per claimant, per award, or per type of award.

Applying the 500-week limitation period to each injury has its roots in the history of the Act.  The limitations period originally was found in the sections dealing with total and partial disability, originally sections 30 and 31 in Chapter 400 of Acts 1918, respectively.  The relevant language of those sections provided:

Sec. 30.  Where the incapacity for work resulting from the injury is total, the employer shall pay . . . to the injured employee during such total incapacity a weekly compensation . . . and in no case shall the period covered by such compensation be greater than five hundred weeks . . . .

Sec. 31.  Except as otherwise provided in the next section hereafter, where the incapacity for work resulting from the injury is partial, the employer shall pay . . . to the injured employee during such incapacity a weekly compensation . . . and in no case shall the period covered by such compensation be greater than three hundred weeks from the date of the injury.  In case the partial incapacity begins after a period of total incapacity, the latter period shall be deducted from the maximum period herein allowed for partial incapacity.

Du Pont's position that the award should be credited against each injury for purposes of the compensation limit of Code § 65.2-518 depends on its characterization of the award as a "combined award" based on three separate injuries. However, one award for three separate injuries violates Code § 65.2-506's prohibition against paying benefits for more than one injury at a time.

Du Pont made no attempt in 1994, and does not argue here, that the award was or should have been somehow apportioned among the three injuries based on each injury's contribution to the disabling condition, constituting in effect three awards. Nor did Du Pont seek to have the award attributed to a new "combined injury" distinct from the three separate injuries in order to insure compliance with Code § 65.2-506.

Furthermore, prior to this appeal, Du Pont did not argue that Eggleston's request for temporary total incapacity was

_____

A plain reading of these two sections shows that the limitations period was applied to the injury. This language remained virtually unchanged until 1990, when the General Assembly eliminated the restriction regarding payment of partial disability for a period measured "from the date of the injury." Then, in 1997, the General Assembly deleted the limitation period from the partial and total temporary disability sections, Code §§ 65.2-500 and -502, and placed the 500-week limitation period in Code § 65.2-518. Nothing in the legislative history or case law since 1997 indicates that moving the 500-week limitation period to Code § 65.2-518 constituted a substantive change which would require applying the limitations period to something other than the injury.

8

dependent on all three injuries and that, without any one of them, her incapacity claim would fail. The record shows that when Du Pont initiated the instant litigation in 1999, its application for change in condition asserted that one of the claimant's injuries, the gamekeepers' thumb, had resolved itself and asked the Commission to "reduce the amount of temporary total disability benefits being paid to the claimant." Du Pont did not ask that the 1994 award be terminated because one of the three injuries upon which the award was based no longer existed, thereby implicitly recognizing that the condition of temporary total incapacity did not necessarily require the existence of all three injuries.

We agree that, fairly read, the language of the deputy commissioner in his 1994 opinion implies, although it does not state, that he found the claimant's incapacity resulted from the three injuries. We also agree that the language gives rise to an inference that some combination of the injuries supported the award for temporary total incapacity. However, neither of these inferences provides sufficient guidance to resolve the question of whether the 1994 award should have been simultaneously credited against each of Eggleston's injuries for purposes of the 500-week compensation limitation. Thus, we turn to the applicable case law and the Commission's actions in handling the 1994 award.

The workers' compensation statutes do not address the proper treatment of a single award that is based on a combination of injuries.  However, workers' compensation case law developed by the Court of Appeals provides some guidance. The Grief Companies/Genesco, Inc. v. Hensley, 22 Va. App. 546, 553, 471 S.E.2d 803, 807 (1996), involved two injuries which "together caused total disability."  In that case, the Commission had determined that the claimant's temporary total disability was " 'due partially to her right hand condition and partially to the left.  It cannot be determined which condition is predominately disabling.' "  Id. at 550, 471 S.E.2d at 805-06.  The right hand condition had predated the left hand condition and, based on that condition, the claimant was receiving temporary total disability benefits at the time the left hand condition arose.  Id.  The Court of Appeals concluded that because the condition of the left hand "contributes to" the total incapacity, that condition "may properly be considered the basis for a total incapacity award."  Id. at 553, 471 S.E.2d at 807.  The Court of Appeals went on to instruct that, pursuant to Code § 65.2-506[2], the total incapacity award should be paid for

_____

[2] Code § 65.2-506, in its entirety, reads:

**Compensation after second injury in same employment. –**
If an employee receives an injury for which compensation is payable while he is still receiving or entitled to compensation for a previous injury in the

10

the left hand first and, when that compensation was exhausted or the condition resolved itself, the temporary total incapacity award the claimant had been receiving for the right hand should be resumed, "if justified."  Id.

The rule of the Grief case is that where more than one injury contributes to the incapacitating condition, a component injury may be the basis for the temporary total incapacity award.  When that injury resolves itself or the compensation limitation of Code § 65.2-518 is reached, the claimant can continue to receive temporary total incapacity benefits based on the other component injury only if the evidence still supports a finding that the claimant is totally incapacitated based on the other component injury.

The procedure prescribed by the Court of Appeals in the Grief case is precisely the process employed by the Commission

same employment, he shall not at the same time be entitled to compensation for both injuries, but if he is, at the time of the second injury, receiving compensation under the provisions of § 65.2-503, payments of compensation thereunder shall be suspended during the period compensation is paid on account of the second injury, and after the termination of payments of compensation for the second injury, payments on account of the first injury shall be resumed and continued until the entire amount originally awarded has been paid.  However, if, at the time of the second injury, he is receiving compensation under the provisions of § 65.2-502, then no compensation shall be payable on account of the first injury during the period he receives compensation for the second injury.

11

in this case.  The Commission treated the deputy commissioner's 1994 award as an award based on the condition resulting from three separate injuries.  The gamekeepers' thumb injury contributed to the condition causing the total loss of earning capacity, that is the temporary total incapacity, and as such could be considered as the basis for the award.  Accordingly, the Commission, as in Grief, attributed the award to the gamekeepers' thumb injury.  When that injury resolved itself, following the hearing on Du Pont's application for change in condition, the deputy commissioner determined that "the employer has now established that the claimant's disability is due only to her two remaining conditions."[3]  Again, as in Grief, because the continued compensation was "justified," the compensation award could be based on a component of the disabling condition and that component, the carpal tunnel injury, would be credited with the award until that injury resolved itself or the compensation limit for that injury was reached.

Nothing in this procedure allows the claimant to recover more than 500 weeks of compensation for any one injury nor is compensation for each component injury guaranteed.  Following resolution of or compensation exhaustion for the initial injury,

---

[3] Although Grief suggests that the claimant bears the burden to establish continued disability, in this case Du Pont apparently did not dispute Eggleston's continued disability

Eggleston carries the burden of showing that a component injury continues to support a finding of temporary total incapacity.

Accordingly, because the circumstances of this case do not come within the provisions of the Workers' Compensation Act that authorize the Commission to credit a single payment as more than one week compensation for purposes of Code § 65.2-518 and because the crediting procedure followed by the Commission in this case did not result in a violation of Code § 65.2-518, we will affirm the judgment of the Court of Appeals.

Affirmed.

---

because it did not appeal the 2000 ruling of the deputy commissioner in this regard.